IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CEDRIC DEAN, | ) | CASE NO. 4:17 CV 1746 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

*Pro se* Petitioner Cedric Dean filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 in the United States District Court for the Northern District of New York on December 23, 2015. At that time, Petitioner was incarcerated in FCI Ray Brook, which is located within that judicial district. The case was fully briefed in April 2016. Petitioner was transferred from FCI Ray Brook in New York to FCI Elkton in Ohio in June 2016. He notified the New York District Court of this fact, twice, once in June 2016 and once in August 2016. One year later, on August 21, 2017, the New York District Court declared that because Petitioner was now at FCI Elkton, his custodian was no longer within their judicial district and transferred the case to the Northern District of Ohio. It is now pending before this Court.[1]

---

[1] It is true that the proper Respondent to a Petition for Writ of Habeas Corpus is the Petitioner's immediate custodian, *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004); however, Supreme Court case law makes it clear that if a Petitioner properly brings a habeas corpus case in a particular district and then is transferred to another jurisdiction while the Petition is pending, the Court in
(continued...)

**Factual Background**

Petitioner challenges a disciplinary hearing that took place at FCI Pollock in Louisiana in March 2014. He was accused of threatening another inmate, Ronald Richard, and attempting to extort $10,000.00 from Richard's mother, Linda Perry. Prison officials intercepted a telephone call from Richard to Perry in which Richard informed his mother that he was being threatened by another inmate for $10,000.00. He indicated he would have that inmate call her. Prison officials then intercepted a telephone call from Petitioner to Perry in which Petitioner told Perry he was entitled to $10,000.00 and she was responsible for paying it. She is heard in the call saying, "[you will] get your money." (ECF No. 10-2 at PageID# 58). Richard then sent his mother an email in which he stated, "The ghost writer wants his papers back [or] else. I don't know what to do. Things are going to get real, real bad tomorrow. If you don't hear from me you know why." (ECF No. 10-2 at PageID# 60).

Petitioner contends the statement to Perry was taken out of context. He claims he was hired by inmate Waller to ghost write a book about Waller's wife's murder. Because Waller could not profit from a book pertaining to his crime, Waller recruited Richard who in turn recruited Perry to secure a lucrative book deal. Petitioner contends Waller and Richard sent his manuscript to Perry,

---

[1](...continued)
which the Petition was originally filed retains jurisdiction and remains the appropriate venue. *Rumsfeld*, 542 U.S. at 440-41; *Ex parte Mitsuye Endo*, 323 U.S. 283, 306 (1944). Therefore, Petitioner's transfer from New York's FCI Ray Brook to Ohio's FCI Elkton subsequent to his filing of this Petition did not divest the Northern District of New York of jurisdiction over this case. Nevertheless, this case has been transferred here, and this Court does have jurisdiction over Petitioner's custodian. In the interest of judicial economy, this Court will address the merits of the Petition.

without his knowledge, hoping to collect the money from the sale of the book without paying him. He states his telephone call to Perry was in regard to this agreement.

Petitioner was charged with disruptive conduct most likely extortion on March 7, 2014. He was given a copy of the incident report on March 7, 2014 and was informed of his rights by his counselor on March 10, 2014. A staff member was selected to assist him and appear on his behalf at the disciplinary hearing conducted on March 19, 2014.

Petitioner requested that eight people be called to testify on his behalf: Inmate Harold Kelly, Inmate James Richard, Inmate Ronald Richard, Inmate Waller, and four Special Investigations Services ("SIS") supervisors. The Disciplinary Hearing Officer ("DHO") interviewed Inmate Kelly and determined that he would give testimony incriminating rather than exculpating to Petitioner and declined to call him. The second inmate, James Richard, could not be identified or located and was not housed at FCI Pollock at the time of the incident. Inmate Ronald Richard was identified as the victim. Due to separation orders in place, the DHO determined that allowing Petitioner to call him as a witness would compromise Richard's safety. Waller was on Petitioner's list of potential witnesses; however, the DHO determined that by Petitioner's own account, Waller could not provide first-hand knowledge of the interaction between Petitioner and Perry. Furthermore, the victim, Richard, was not involved in the book contract with Petitioner and Waller. His four remaining requested witnesses were members of the Special Investigations Services team ("SIS"). The DHO determined the SIS team members named had no involvement in the investigation of the charges and therefore could not provide any relevant information.

The DHO found Petitioner committed the act as charged, and issued a six-page, single-spaced report detailing his findings. He determined that Petitioner had attempted to obtain money from

Perry and that he did so through intimidation of her son, which made both Richards and Perry fear that Richards would be assaulted if the money were not paid to Petitioner. He found Perry's testimony to be more credible than Petitioner's testimony. The DHO sanctioned Petitioner with loss of twenty-seven days of Good Conduct Time, disciplinary segregation for ninety days, loss of telephone privileges for one year, loss of commissary privileges for three months, loss of visitation for one year, and loss of Trulincs for one year.

Petitioner filed this Petition under 28 U.S.C. § 2241 to contest the hearing and the result. He contends he was denied the minimal due process protections in the hearing process when the DHO excluded "core exculpatory evidence" and refused to allow him to call witnesses, when the DHO refused to interview his requested witnesses and refused to investigate his claims of undue influence by SIS personnel, and when he was denied access to the DHO report after his transfer to FCI Ray Brook.

## Standard of Review

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds

for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

## Analysis

The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least twenty-four hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

In this case, Petitioner was not denied due process at his hearing. He was provided with more than twenty-four hours notice of the hearing. A staff member was appointed to assist him at the hearing. He provided a list of individuals who he wanted to be questioned or called as witnesses. The DHO spoke to these individuals and determined they would either not support Petitioner's version of events or would not have first-hand knowledge of the events. The DHO issued a six-page

report of his findings and detailed the evidence he relied on to make this determination. Although Petitioner claims he was denied access to this report after he was transferred to FCI Ray Brook and that interfered with his ability to file this § 2241 Petition, it does not mean he was denied due process at the hearing.

Finally, due process requires that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The DHO is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, a DHO may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

Petitioner's disciplinary hearing findings were based on some evidence of his guilt. The DHO spoke to the victim and his mother, reviewed the telephone conversations and emails, and was satisfied that Petitioner had demanded money in a way that was intimidating and caused fear that Richard would be assaulted if the money was not paid. Regardless of whether a contract was in place between Waller and Petitioner to write a book, the interaction between Petitioner and Perry supported a finding of guilt of disruptive conduct most likely extortion. Petitioner was not denied due process.

### Conclusion

Accordingly, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied and this action is dismissed pursuant to 28 U.S.C. § 2243. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

_Donald C. Nugent_
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: _September 18, 2017_